UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

SAUNDRA MCNAIR,

    Plaintiff,

        v.                                Civil Action No. 12-248 (JEB)

DISTRICT OF COLUMBIA,

    Defendant.

**MEMORANDUM OPINION**

Plaintiff Saundra McNair was a hearing officer with the District of Columbia Department of Consumer and Regulatory Affairs who has suffered from lupus and a series of related complications since 2001. She brought this action against the District under the Americans with Disabilities Act of 1990, alleging both that DCRA failed to provide her with reasonable accommodations while she recovered from back surgery and that it retaliated against her by threatening her with termination after she requested such accommodations. Although discovery has not yet commenced, the District now files this Motion for Judgment on the Pleadings or, in the alternative, for Summary Judgment. As to Plaintiff's first claim, the Court finds that summary judgment would be premature at this early juncture in the proceedings. The Court, however, agrees that McNair's retaliation claim must fail as a matter of law, and it will thus grant the Motion for Judgment on the Pleadings as to that count.

**I.  Background**

According to her Complaint, which must be presumed true for a motion for judgment on the pleadings, though not for summary judgment, McNair was diagnosed with systemic lupus erythematosus in 2001. See Compl., ¶ 8. She alleges that she has suffered from a variety of

1

complications due to her disease, including difficulty recovering from physical ailments ranging from the common cold to complex surgeries; difficulty with sitting, standing, walking, and concentrating; and occasional bouts of fatigue and short-term partial paralysis. Id., ¶¶ 9, 11. Despite these challenges, McNair began working as a Hearing Examiner with DCRA in August 2002, where her job responsibilities included "conducting administrative hearings, considering and evaluating written motions and other case filings, engaging in legal research, drafting decisions and orders, and communicating with all parties involved in administrative cases before her." Id., ¶ 12. She asserts that she notified her employer of her disability and that she was periodically afforded "such reasonable accommodations as working from home, or working on a modified schedule" as her illness required. Id., ¶¶ 13-15.

In November 2005, McNair was diagnosed with degenerative disc disease and had to undergo "numerous back surgeries . . . in an effort to repair her injured spine." Id., ¶ 16. She took extended medical leave during her complicated recovery, but her leave expired on May 11, 2006. Id., ¶¶ 17-20. At this point, the parties' accounts diverge. When her leave expired, McNair alleges that her supervisor, Keith Anderson, verbally indicated that she could work from home for some time and that she then resumed work on administrative cases she had pending at the beginning of her extended leave. Id., ¶ 20. According to the District, Anderson notified McNair on July 7 "that the DCRA had not authorized [her] informal demand . . . and that [she] would have to submit her reasonable accommodation request in writing." See Mot., Statement of Undisputed Material Facts, ¶ 6. McNair, by contrast, describes this decision as a "revocation" of a preexisting authorization to work from home. See Compl., ¶ 23. She submitted a formal written request for a reasonable accommodation on July 14, 2006, requesting permission to work from home two or three days per week, with flexible hours on the days she was in the office. See

SUMF, ¶ 7.  On August 3, 2006, DCRA informed her that it believed it could not permit her to work from home as requested and that she had been designated absent without leave (AWOL). Id., ¶ 8; Mot., Exh. F (Letter from Deborah Bonsack to Saundra McNair).

In late September 2006, DCRA Director Patrick J. Canavan reminded her of her AWOL status and her lack of work-from-home authorization and instructed her to report to work by November 6, 2006, or face possible termination.  See SUMF, ¶ 9; Mot., Exh. I (Letter from Patrick Canavan to Saundra McNair).  This date was later extended to December 11, 2006.  See SUMF, ¶ 10.  On January 4, 2007, she was given a 15-day advance written notice that DCRA proposed to remove her from her position, which she successfully contested.  See Compl., ¶¶ 36-37; Mot., Exh. L (Advanced Written Notice of Proposed Removal).  As a result, DCRA formally issued its decision not to terminate her on September 19, 2007, and instructed her to report to work by October 1, 2007.  See Compl., ¶¶ 36-37; Mot., Exh. M (Letter from Linda K. Argo to Saundra McNair).  McNair did report to work on October 1, 2007, see SUMF, ¶ 11, but claims "that Defendant had not provided any of the previously promised reasonable accommodations" and "purposefully prevented [her] from fulfilling her job responsibilities and duties."  See Compl., ¶ 40.  McNair remained in her position until February 12, 2009, when she resigned to accept a position with the District's Department of Employment Services.  See SUMF, ¶ 14.

After properly exhausting her administrative remedies, McNair brought this suit against the District on February 14, 2012.  She alleges two ADA violations: first, that the District discriminated against her by failing to provide the reasonable accommodations she requested (Count I), Compl., ¶¶ 46-51, and second, that the District retaliated against her by notifying her of her proposed termination after she had requested accommodations (Count II).  Id., ¶¶ 52-56.

The District has filed this Motion for Judgment on the Pleadings or, in the alternative, for Summary Judgment, which the Court now considers.

## II.     Legal Standard

The District styles its Motion as one for judgment on the pleadings or, in the alternative, summary judgment. These entail very different legal standards. This Court evaluates a Rule 12(c) motion for judgment on the pleadings under the same standard as a Rule 12(b)(6) motion to dismiss. See Robinson-Reeder v. Am. Council on Educ., 532 F. Supp. 2d 6, 12 (D.D.C. 2008). The factual allegations presented in the Complaint must thus be presumed true and should be liberally construed in Plaintiff's favor. See Leatherman v. Tarrant Cnty. Narcotics Intelligence & Coordination Unit, 507 U.S. 163, 164-68 (1993). The notice-pleading rules are "not meant to impose a great burden upon a plaintiff." Dura Pharm., Inc. v. Broudo, 544 U.S. 336, 347 (2005). Although "detailed factual allegations" are not necessary to withstand a Rule 12(b)(6) motion, Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007), "a complaint must contain sufficient factual matter, [if] accepted as true, to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (internal quotation omitted). Plaintiff must put forth "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. Though a plaintiff may survive a Rule 12(b)(6) motion even if "recovery is very remote and unlikely," Twombly, 550 U.S. at 556 (quoting Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)), the facts alleged in the complaint "must be enough to raise a right to relief above the speculative level." Id. at 555.

A motion for judgment on the pleadings under Rule 12(c) must rely solely on matters within the pleadings, see Fed. R. Civ. P. 12(d), which include statements adopted by reference as well as copies of written instruments joined as exhibits. Fed. R. Civ. P. 10(c). Where the Court

4

must consider "matters outside the pleadings" to reach its conclusion, a motion for judgment on the pleadings "must be treated as one for summary judgment under Rule 56." Fed. R. Civ. P. 12(d); see also Yates v. District of Columbia, 324 F.3d 724, 725 (D.C. Cir. 2003).

Summary judgment, conversely, may be granted if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986); Holcomb v. Powell, 433 F.3d 889, 895 (D.C. Cir. 2006). A fact is "material" if it is capable of affecting the substantive outcome of the litigation. See Liberty Lobby, 477 U.S. at 248; Holcomb, 433 F.3d at 895. A dispute is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. See Scott v. Harris, 550 U.S. 372, 380 (2007); Liberty Lobby, 477 U.S. at 248; Holcomb, 433 F.3d at 895. "A party asserting that a fact cannot be or is genuinely disputed must support the assertion" by "citing to particular parts of materials in the record" or "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).

When a motion for summary judgment is under consideration, "[t]he evidence of the non-movant[s] is to be believed, and all justifiable inferences are to be drawn in [her] favor." Liberty Lobby, 477 U.S. at 255; see also Mastro v. PEPCO, 447 F.3d 843, 850 (D.C. Cir. 2006); Aka v. Wash. Hosp. Ctr., 156 F.3d 1284, 1288 (D.C. Cir. 1998) (*en banc*). On a motion for summary judgment, the Court must "eschew making credibility determinations or weighing the evidence." Czekalski v. Peters, 475 F.3d 360, 363 (D.C. Cir. 2007).

The nonmoving party's opposition, however, must consist of more than mere unsupported allegations or denials and must be supported by affidavits, declarations, or other

competent evidence, setting forth specific facts showing that there is a genuine issue for trial. See Fed. R. Civ. P. 56(e); Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986). The nonmovant is required to provide evidence that would permit a reasonable jury to find in its favor. Laningham v. Navy, 813 F.2d 1236, 1242 (D.C. Cir. 1987). If the nonmovant's evidence is "merely colorable" or "not significantly probative," summary judgment may be granted. Liberty Lobby, 477 U.S. at 249-50.

### III.   Analysis

The District moves for judgment on the pleadings or, in the alternative, summary judgment as to both of McNair's claims. More specifically, Defendant argues that Plaintiff's claims are deficient on their face and that, even if they survive judgment on the pleadings, the undisputed facts demonstrate that no ADA violation occurred. See Mot. at 4-5. The Court will first consider the facial sufficiency of the Complaint and then move to a discussion of summary judgment.

####    A.   Judgment on the Pleadings

In seeking judgment on the pleadings, Defendant focuses on Plaintiff's retaliation claim (Count II). While McNair discusses other incidents of retaliation in her Opposition, see Opp. at 20, her Complaint pleads only one retaliatory action by the District: she alleges that her supervisor's letter in January 2007 providing her with notice of a proposed termination was sent in retaliation for her request for reasonable accommodations, a protected activity under the ADA. See Compl., ¶¶ 53-55; Advanced Written Notice of Proposed Removal. The District argues that it is entitled to judgment on the pleadings because this letter did not, as a matter of law, constitute an adverse employment action. See Mot. at 13-15. The Court finds the District's

position is consistent with the clear law of this Circuit and will thus grant it judgment on the pleadings as to Count II.

Like all of its sister circuits, the D.C. Circuit "analyz[es] . . . retaliat[ion] claim[s] . . . us[ing] the burden-shifting framework established by the Supreme Court in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973) . . . developed for Title VII cases." Smith, 430 F.3d 450, 455 (D.C. Cir. 2005) (collecting cases). "Under this framework, the plaintiff must establish three elements of a prima facie case of retaliation: first, that she 'engaged in a protected activity'; second, that she 'was subjected to adverse action by the employer'; and third, that 'there existed a causal link between the adverse action and the protected activity.'" Smith, 430 F.3d at 455 (quoting Jones v. Wash. Metro. Area Transit Auth., 205 F.3d 428, 433 (D.C. Cir. 2000)). Neither party disputes that McNair engaged in a protected activity when she requested accommodations for her disability; the District, however, argues that she never experienced any materially adverse employment action. See Mot. at 13-15.

"[A] 'materially adverse' action for purposes of a retaliation claim is one that 'could well dissuade a reasonable worker from making or supporting a charge of discrimination.'" Gaujacq v. EDF, Inc., 601 F.3d 565, 577 (D.C. Cir. 2010) (quoting Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 57 (2006)); see also Mogenhan v. Napolitano, 613 F.3d 1162, 1166 (D.C. Cir. 2010) (noting that D.C. Circuit has "applied the Burlington Northern standard to retaliation claims under the Rehabilitation Act as well as Title VII"). A long line of cases from this Circuit and others have held that threats, revoked disciplinary plans, and other such ultimately unconsummated actions are not materially adverse for purposes of retaliation claims. See, e.g., Blaloch v. Kempthorne, 550 F.3d 1191, 1199 (D.C. Cir. 2008) ("[plaintiff] further argues that [his] proposed 2-day and 30-day suspensions were materially adverse . . . [b]ut courts have been

7

unwilling to find adverse actions where the suspension is not actually served") (emphasis deleted); Whittaker v. N. Ill. Univ., 424 F.3d 640, 647 (7th Cir. 2005) ("[A] suspension without pay that is never served does not constitute an adverse employment action."); Stewart v. Evans, 275 F.3d 1126, 1135 (D.C. Cir. 2002) ("this type of temporary designation [delaying a promotion] is not one of the terms, conditions or privileges of employment contemplated by Title VII"); Pennington v. City of Huntsville, 261 F.3d 1262, 1267 (11th Cir. 2001) ("the caselaw in this area indicates that the decision to reprimand or transfer an employee, if rescinded before the employee suffers a tangible harm, is not an adverse employment action"); Mungin v. Katten Muchin & Zavis, 116 F.3d 1549, 1555 (D.C. Cir. 1997) ("'interlocutory or [inter]mediate decisions having no immediate effect upon employment . . . were not intended to fall within the direct proscriptions of . . . Title VII'") (quoting Page v. Bolger, 645 F.2d 227, 233 (4th Cir. 1981)).

Indeed, this Court itself has repeatedly applied this standard to hold that instances of conduct exactly like that about which McNair complains were not adverse employment actions. For example, in Mahoney v. Donovan, 824 F. Supp. 2d 49 (D.D.C. 2011), this Court held that an email "merely advising [an employee] . . . that if he continued a course of action he might be subject to discipline does not" constitute an adverse employment action." 824 F. Supp. 2d at 61 (emphasis in original). Likewise, in Bailey v. Wash. Metro. Area Transit Auth., 810 F. Supp. 2d 295 (D.D.C. 2011), this Court held that the proffer of a severance package to an employee who was performing unsatisfactorily was not an adverse action, even though plaintiff "styl[ed] the offer . . . as an attempt[ ] to force her to resign." 810 F. Supp. 2d at 301 (internal quotation marks omitted). This Court is in good company with others in this Circuit and beyond in these

decisions and sees no reason to deviate from them here.  See Herbert v. Architect of the Capitol, 776 F. Supp. 2d 59, 75-76 (D.D.C. 2011) (collecting cases).

      The Court does not doubt that it was both unpleasant and disconcerting for McNair to receive a letter from her supervisor threatening her with termination proceedings.  The receipt of such a letter, however, did not impose a tangible harm.  In fact, she kept her job until resigning two years later in February 2009.  As our Circuit notes, "[N]ot everything that makes an employee unhappy is an actionable adverse action."  Broderick v. Donaldson, 437 F.3d 1226, 1233 (D.C. Cir. 2006).  The District correctly observes that "DCRA had an affirmative duty to provide McNair with proper notice . . . so that she could challenge her proposed termination," see Mot. at 14, which, in fact, she successfully did.  Given the complete absence of tangible, permanent injury over and above any "[p]urely subjective injuries, such as . . . dissatisfaction . . . or public humiliation," the Court is unable to find that McNair experienced an adverse employment action for purposes of her retaliation claim.  Forkkio v. Powell, 306 F.3d 1127, 1131 (D.C. Cir. 2002).  The District is thus entitled to judgment on the pleadings on Count II.

      In similarly seeking judgment on the pleadings on Count I, the failure-to-accommodate cause of action, the District relies heavily on material in the scant record available at this stage in the litigation – including its own correspondence with Plaintiff, official job descriptions, and other related documents.  As a result, judgment on the pleadings would be inappropriate, since such a motion under Rule 12(c) must rely solely on matters within the pleadings.  See Fed. R. Civ. P. 12(d).  Where, as here, the Court is asked to consider "matters outside the pleadings," the Court must treat the motion "as one for summary judgment under Rule 56."  Fed. R. Civ. P. 12(d); see also Yates, 324 F.3d at 725.  The Court, accordingly, will do so.

B.  Summary Judgment

If it is not entitled to judgment on the pleadings on Count I, the District maintains that it should alternatively obtain summary judgment. In so arguing, the District identifies a procedural flaw in McNair's Opposition: she failed to submit a statement of controverted facts with her Opposition to its Motion, as required by Local Rule 7(h)(1). See Rep. at 1 n.1. The District correctly observes that Local Rule 7(h)(1) thus permits the Court to assume the District's statement of material facts to be admitted. While this omission is surprising, the Court is even more troubled by the lack of any citations to record evidence in McNair's pleadings – either in a separate statement of facts or otherwise. Throughout her Opposition papers, McNair references only four factual "sources": her unverified complaint, the letter she wrote to Acting Rent Administrator Keith Anderson requesting accommodations for her disability, the list of proposed accommodations she submitted to Deborah Bonsack, DCRA's Assistant Director for Administration, and the EEOC's Determination on her original complaint. None of these, however, is connected to any sworn declaration or testimony, and she improperly cites her letter for the truth of its contents.

While McNair's briefs are assuredly deficient in this regard, the Court holds that the District is nonetheless not entitled to summary judgment at this stage in the proceedings. Although Plaintiff has developed no record, there is some language in her submissions and the District's that could conceivably create a dispute of material fact. In addition, "[s]ummary judgment 'ordinarily is proper only after the plaintiff has been given adequate time for discovery.'" Information Handling Services, Inc. v. Defense Automated Printing Services, 338 F.3d 1024, 1032 (D.C. Cir. 2003) (quoting Americable Int'l, Inc. v. Department of Navy, 129 F.3d 1271, 1274 (D.C. Cir. 1997)); see also Celotex Corp., 477 U.S. at 322. Because neither

party has had a chance to engage in discovery, the Court will deny Defendant's Motion at this point, but will permit the District to renew it after further discovery. The Court, at that stage, furthermore, will expect Plaintiff's compliance with pleading rules.

## IV.     Conclusion

For the aforementioned reasons, the Court will grant in part and deny in part Defendant's Motion. A separate Order consistent with this Opinion will be issued this day.

*/s/ James E. Boasberg*
JAMES E. BOASBERG
United States District Judge

Date:  November 9, 2012