UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

SAUNDRA MCNAIR,

    Plaintiff,

        v.

DISTRICT OF COLUMBIA,

    Defendant.

Civil Action No. 12-248 (JEB)

## MEMORANDUM OPINION

Plaintiff Saundra McNair, a former hearing officer with the District of Columbia Department of Consumer and Regulatory Affairs, has suffered from lupus and a series of related complications since 2001. She brought this action against the District under the Americans with Disabilities Act, alleging that DCRA both failed to provide her with reasonable accommodations while she recovered from back surgery and retaliated against her by threatening termination after she requested those accommodations. This Court dismissed McNair's retaliation claims in a 2012 Memorandum Opinion, but it allowed her to commence discovery relating to the allegations in her reasonable-accommodation count. See McNair v. District of Columbia (McNair I), 903 F. Supp. 2d 71 (D.D.C. 2012). Discovery now complete, Defendant moves for summary judgment. Although Plaintiff's remaining accommodation claims are hardly robust – indeed, the Court concludes that certain ones fail as a matter of law – some are sufficient to withstand the District's Motion and proceed to trial.

**I.**     **Background**

Many of the facts in this case are disputed. On a motion for summary judgment, the Court must take the evidence of the non-movant – here, Plaintiff – as true and must view the facts in

1

the light most favorable to her. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). In setting forth these facts, therefore, the Court does not endorse them as true; instead, they are simply allegations for which Plaintiff provides record support – in this case largely by reference to her deposition. It goes almost without saying, then, that where Plaintiff provides no such support, the Court may assume Defendant's version of the facts – itself supported by record evidence – to be true.

McNair was diagnosed with systemic lupus erythematosus in 2001. See Opp., Exh. A (Deposition of Saundra McNair) at 131. She has suffered from a variety of complications since then, including difficulty recovering from physical ailments ranging from the common cold to complex surgeries; difficulty with sitting, standing, walking, and concentrating; and occasional bouts of fatigue and numbness. See id. at 158-59. Despite these challenges, McNair began working as a Hearing Examiner with DCRA in August 2002, see id. at 12-13, where her job responsibilities included conducting administrative hearings, considering and evaluating written motions and other case filings, engaging in legal research, drafting decisions and orders, and communicating with all parties involved in administrative cases before her. See Mot., Exh. P (Hearing Examiner Official Job Description), ¶¶ 3-8. She asserts that she notified her employer of her disability and was told "that if [she] needed various accommodations to make [DCRA] aware and they would provide them." McNair Depo. at 58-59.

In November 2005, McNair was diagnosed with degenerative-disc disease and had to undergo several back procedures, including at least one surgery. See id. at 51-53. She took extended medical leave during her recovery; this leave expired on or around May 11, 2006, see Def. Statement of Undisputed Material Facts, ¶ 6.

At this point, the parties' accounts diverge. When her leave expired, McNair avers, her supervisor, Keith Anderson, verbally indicated that she could work from home for some time. See McNair Depo. at 61-62. She began to do so, resuming work on administrative cases that were pending at the beginning of her extended leave. See id. at 73-74. According to the District, however, Anderson notified McNair on July 7, 2006, "that the DCRA had not authorized [her] informal demand to work from home and that [she] would have to submit her reasonable accommodation request in writing." See Def. SUMF, ¶ 6. McNair, by contrast, contends that DCRA "stopped [her] accommodations" – that is, her pre-existing authorization to work from home. See McNair Depo. at 62; Opp. at 2 (arguing that the July 2006 decision "revoke[d] the reasonable accommodation previously granted").

McNair submitted a formal written request for accommodations on July 14, 2006, seeking, among other things, permission to work from home two or three days per week. See McNair Depo. at 68-69; Mot., Exh. G (McNair's List of Proposed Accommodations). On August 3, 2006, DCRA informed her that it could not permit her to work from home and that she had been designated absent without leave (AWOL). See Mot., Exh. F (Letter from Deborah Bonsack to Saundra McNair). In the meantime, McNair scheduled a meeting with the DCRA leadership for some time around September 25. See McNair Depo. at 66-69. Ultimately, she claims, nothing came of that meeting, as Defendant "summarily denied" each of her proposed reasonable accommodations without making any alternative suggestions. Id. at 66.

Indeed, on September 29, just four days after that meeting, DCRA Director Patrick J. Canavan reminded McNair of her AWOL status and her lack of work-from-home authorization – though he did not mention the other accommodations McNair had proposed – and instructed her to report to work by November 6, 2006, or face possible termination. See Mot., Exh. I (Letter

from Patrick Canavan to Saundra McNair). This date was later extended to December 11, 2006. See Def. SUMF, ¶ 10. On January 4, 2007, McNair, who still had not returned to work, was given 15-day advance written notice that DCRA intended to remove her from her position. See Mot., Exh. L (Advance Written Notice of Proposed Removal). She successfully contested her removal, and, on September 19, 2007, DCRA formally decided not to terminate her. She was instructed to report to work by October 1, 2007. See Mot., Exh. M (Letter from Linda K. Argo to Saundra McNair).

McNair finally did return to work on October 1, 2007, see Def. SUMF, ¶ 11, despite Defendant's refusal to permit her to work from home or to provide the other accommodations she requested. See McNair Depo. at 66, 94. Though she had officially been transferred to a partner agency to serve as a Rental Conversion Specialist, she worked out of the same building, and her duties were largely the same. See id. at 87-89. She remained in that position until February 12, 2009, when she resigned to accept a position with the District's Department of Employment Services. See Def. SUMF, ¶ 14.

After properly exhausting her administrative remedies, McNair brought this suit against the District on February 14, 2012, alleging two ADA violations: first, that the District discriminated against her by failing to provide the reasonable accommodations she requested, see Compl., ¶¶ 46-51 (Count I); and second, that the District retaliated against her by notifying her of her proposed termination after she had requested accommodations. See id., ¶¶ 52-56 (Count II). In a 2012 Memorandum Opinion, this Court dismissed the retaliation claims. Although it noted that Plaintiff's briefs were "assuredly deficient," McNair I, 903 F Supp. 2d at 77, the Court allowed her to undertake some discovery relating to Count I because "there [was] some language in her submissions and the District's that could conceivably [have] create[d] a dispute of material

4

fact." Id. Discovery complete, Defendant has renewed its Motion for Summary Judgment, to which the Court now turns.

## II. Legal Standard

Summary judgment may be granted if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see also Liberty Lobby, 477 U.S. at 247-48; Holcomb v. Powell, 433 F.3d 889, 895 (D.C. Cir. 2006). A fact is "material" if it is capable of affecting the substantive outcome of the litigation. See Liberty Lobby, 477 U.S. at 248; Holcomb, 433 F.3d at 895. A dispute is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. See Scott v. Harris, 550 U.S. 372, 380 (2007); Liberty Lobby, 477 U.S. at 248; Holcomb, 433 F.3d at 895. "A party asserting that a fact cannot be or is genuinely disputed must support the assertion" by "citing to particular parts of materials in the record" or "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).

When a motion for summary judgment is under consideration, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in [her] favor." Liberty Lobby, 477 U.S. at 255; see also Mastro v. PEPCO, 447 F.3d 843, 850 (D.C. Cir. 2006); Aka v. Wash. Hosp. Ctr., 156 F.3d 1284, 1288 (D.C. Cir. 1998) (*en banc*). On a motion for summary judgment, the Court must "eschew making credibility determinations or weighing the evidence." Czekalski v. Peters, 475 F.3d 360, 363 (D.C. Cir. 2007).

The nonmoving party's opposition, however, must consist of more than mere unsupported allegations or denials and must be supported by affidavits, declarations, or other competent evidence, setting forth specific facts showing that there is a genuine issue for trial.

See Fed. R. Civ. P. 56(e); Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986). The nonmovant is required to provide evidence that would permit a reasonable jury to find in her favor. See Laningham v. U.S. Navy, 813 F.2d 1236, 1242 (D.C. Cir. 1987).

## III. Analysis

In seeking summary judgment, the District argues that Plaintiff has failed to establish a reasonable-accommodation cause of action under the ADA. To make out such a case, McNair must show that: (1) she was disabled within the meaning of the ADA; (2) DCRA was aware of her disability; (3) she could have done her job with reasonable accommodations; and (4) she was denied such accommodations. See 42 U.S.C. § 12112(a), (b)(5)(A); Carr v. Reno, 29 F.3d 525, 529 (D.C. Cir. 1994).

As to the first two elements, Plaintiff has provided substantial evidence that she had lupus and related back problems at the relevant times and that DCRA was aware of her condition. See McNair Depo. at 58-59, 131; Mot., Exh. B (Letter from Dr. Andrew T. Lee, Nov. 29, 2005); Exh. C (Letter from Dr. Lee, Feb. 2, 2006); Exh. D (Letter from Dr. Lee, Apr. 12, 2006). DCRA, moreover, concedes those points for the purpose of summary judgment. See Mot. at 4-5. The only issues remaining at this stage, then, are (1) whether McNair could have done her job with a reasonable accommodation; and (2) if so, whether DCRA actually or constructively denied her such assistance. The Court takes each inquiry in turn.

### A. Potential Reasonable Accommodations

To satisfy the third element of an ADA case, a plaintiff must prove that she is a "qualified individual" for the purpose of the Act. See 42 U.S.C. § 12112(a); Woodruff v. Peters, 482 F.3d 521, 526 (D.C. Cir. 2007). Such a person is "an individual with a disability who, <u>with or without reasonable accommodation</u>, can perform the essential functions of the employment position that

6

such individual holds or desires." Carr, 29 F.3d at 529 (citing 29 C.F.R. § 1614.203(a)(6)). An employer need not provide an accommodation, therefore, if the employee still could not perform the essential functions of her job even with such an accommodation. See Woodruff, 482 F.3d at 526-27. The accommodation also must not impose an "undue hardship" on the employer. See 29 C.F.R. 1630.2(o)(4).

McNair provided DCRA with a list of fifteen proposed accommodations. Nine of those involved some form of adjusted work schedule, while the other six consisted of modifications to her workspace and responsibilities in the office. As the District devotes the lion's share of its briefs to McNair's first set of requests, the Court will begin there.

1. *Work from Home*

The centerpiece of McNair's request for an adjusted work schedule involved working from home two to three days each week. Defendant argues that she could not perform her job with such a schedule and that such accommodations would prove unduly burdensome to the District. See Mot. at 6. As the Court agrees that McNair could not have worked from home while tending to the essential functions of her job, it need not address the issue of undue hardship.

It is true that an employer must consider telecommuting as a potential form of reasonable accommodation. See 29 C.F.R. § 1630.2(o)(2)(ii); Carr, 23 F.3d at 530 ("in appropriate cases, [the ADA] requires an agency to consider work at home . . . as [a] potential form[] of accommodation") (citation omitted). That obligation, however, only goes so far. The few cases to touch on this precise subject suggest that if the job in question requires that an employee be present – that is, if the employee can perform the essential functions of her job only by being in the office – the employer need not grant a telecommuting request. Cf., e.g., Langon v. Dep't of

7

Health and Human Servs., 959 F.2d 1053, 1061 (D.C. Cir. 1992) (computer programmer whose work was entirely electronic could perform essential tasks from home); Graffius v. Shinseki, 672 F. Supp. 2d 119, 127 (D.D.C. 2009) (employee whose job was to reconstruct digital databases could do same).

EEOC regulations define "essential functions" as "the fundamental duties of the employment position the individual with a disability holds." 29 C.F.R. § 1630.2(n)(1). In determining whether a function is essential to a particular position, the Court is to grant the employer substantial deference. See Kalekiristos v. CTF Hotel Mgmt. Corp., 958 F. Supp. 641, 660 (D.D.C. 1997); see also 29 C.F.R. § 1630.2(n)(3) ("Evidence of whether a particular function is essential includes . . . [t]he employer's judgment as to which functions are essential."). Employers may point to a variety of evidence to support a claim that a function is essential, including "[w]ritten job descriptions prepared before advertising or interviewing applicants for the job" and "[t]he work experience of past incumbents in the job." 29 C.F.R. § 1630.2(n)(3); see also 42 U.S.C. § 12111(8).

The District has presented an impressive array of evidence suggesting that the essential functions of Hearing Examiners and Rental Conversion Specialists included tasks that could be completed only at the agency's headquarters. For example, Hearing Examiners are expected to conduct administrative hearings on rent-adjustment petitions filed by landlords and tenants, and those hearings are conducted exclusively on site at DCRA. See Mot., Exh. N (Declaration of Keith Anderson), ¶ 6; Exh. P (Hearing Examiner Official Job Description), ¶¶ 3-8. Hearing Examiners, moreover, must be on site to access registration records for housing accommodations and other records, review case-file documentation, listen to tape recordings of hearings, and meet and confer with the Rent Adminsitrator, Supervisory Hearing Examiner, and other staff. See

8

Anderson Decl., ¶ 6. Rental Conversion Specialists, similarly, must be present regularly because they must handle walk-in and scheduled appointments with landlords and tenants. See Mot., Exh. O (Rental Conversion Specialist Official Job Description), ¶¶ 2-8, 12, 14. This work, Defendant asserts, is further complicated by "constantly evolving facts." Mot. at 8; see RCS Official Job Description, ¶ 9.

Plaintiff, for her part, claims that she was able to complete "a substantial amount" of her duties as a Hearing Examiner from home "[i]n years prior to the present dispute." Pl. Statement of Disputed Material Facts (SDMF) at 1; McNair Depo. at 59. What Plaintiff ignores, however, is that completing her work from home three times over six years is different in quality and quantity from her request to do so 40 to 60 percent of the time for the foreseeable future. Indeed, although she had ample opportunity to compile evidence to contradict the District's argument that such an accommodation would prevent her from carrying out the essential functions of her position, she failed to do so. Instead, she relies solely on the bald assertions in her Complaint and in her Opposition to the District's Motion, which is not evidence. As deference is due to the employer's claims regarding essential functions, and as the District has offered substantial evidence to support those claims, the Court concludes as a matter of law that McNair could not perform her job with the flexible schedule she sought.

2. *Workplace Accommodations*

That, however, does not end the matter. Although the Court agrees with Defendant that many of the proposed accommodations – namely, those that involved a "flexible" work schedule – were unreasonable, the proper inquiry is "whether any reasonable accommodation would have allowed [Plaintiff] to perform all the essential functions of [her] job without creating an undue hardship for the agency." See Woodruff, 482 F.3d at 527 (emphasis added) (citing Carr, 23 F.3d

9

at 529). Plaintiff here notes that she proposed six other potential accommodations that would have allowed her to return to work without telecommuting – *e.g.*, a lumbar-support chair and assistance lifting and transporting files and cases. See McNair's List of Proposed Accommodations. Defendant, moreover, does not argue that McNair could not perform the essential functions of her job even with these modifications. The Court thus cannot conclude that she has failed to satisfy the third element of an ADA case in relation to these accommodations. Instead, it must continue to the fourth question: whether the District denied McNair access to such accommodations.

### B. Reasonable Accommodations Denied

Once an employer is aware of its responsibility to provide a reasonable accommodation – in this case, once the District was on notice that McNair had a covered disability that prevented her from doing her job – it must "identify the precise limitations resulting from the disability and potential reasonable accommodations," which is best done through an "informal, interactive process" that involves both the employer and the employee with a disability. 29 C.F.R. § 1630.2(o)(3). The interactive process begins when an employee requests an accommodation. Once this process has begun, "both the employer and the employee have a duty to act in good faith," Conneen v. MBNA America Bank, N.A., 334 F.3d 318, 333 (3d Cir. 2003), and the absence of good faith, including unreasonable delays caused by an employer, can serve as evidence of an ADA violation. See, e.g., Picinich v. United Parcel Serv., 321 F. Supp. 2d 485, 514 (N.D.N.Y. 2004).

"Because the interactive process is not an end in itself," however, "it is not sufficient for [the employee] to show that the [employer] failed to engage in an interactive process or that it caused the interactive process to break down. Rather, [the employee] must show that the result of

10

the inadequate interactive process was the failure of the [employer] to fulfill its role in 'determining what specific actions must be taken by an employer' in order to provide the qualified individual a reasonable accommodation." Rehling v. City of Chicago, 207 F.3d 1009, 1015-16 (7th Cir. 2000) (quoting Beck v. Univ. of Wis. Bd. of Regents, 75 F.3d 1130, 1135 (7th Cir. 1996)). Thus, if a jury could conclude (1) that DCRA failed to engage in good faith in an interactive process regarding McNair's disability, and (2) that such failure prevented the District from according her reasonable accommodations in a timely manner, summary judgment cannot be granted.

Here, the interactive process commenced sometime before September 2006. Earlier in that year, McNair began taking her accrued leave as a result of complications from her back surgeries; by August, McNair's supervisor had notified her that she had to return to work, and she had submitted her list of proposed accommodations. At this point, the presumptions inherent in the summary-judgment inquiry begin to work against the District. It is unquestioned that Plaintiff submitted a list of proposed accommodations in July 2006. The parties agree, furthermore, that McNair met with DCRA managers in September to discuss those accommodations, that no further discussion took place, that Plaintiff did not begin working again until October 2007, and that she did not receive any of the accommodations she requested until at least that time. See McNair Depo. at 97-98. The reason for the breakdown in communications and the ultimate delay, however, is the subject of some dispute.

Defendant argues that it engaged in an interactive process with Plaintiff and acted in good faith to obtain the necessary accommodations, and that Plaintiff was the cause of the delay. See Def. SUMF, ¶ 13. In support of this claim, the District cites a letter from the DCRA Director to McNair stating that the Department was "willing to discuss accommodations that can be made to

11

[her] DCRA workspace." See Mot., Exh. I (Letter from Patrick J. Canavan to Saundra McNair, October 27, 2006). Plaintiff responds that DCRA managers did meet with her in September 2006 to discuss those accommodations, but that after she submitted a renewed written request for accommodations, there was no further communication from the agency, and no accommodations were provided until October 2007, when Plaintiff was transferred to another District agency. See McNair Depo. at 66-68, 79-82.

As a result, reviewing the record in the light most favorable to Plaintiff, the Court cannot agree that Defendant's characterization of the interactive process is correct as a matter of law. On the contrary, although Plaintiff's evidence is hardly overwhelming, a jury could conclude that DCRA was responsible for the breakdown in communication and that this prevented the District from affording reasonable accommodations to Plaintiff in a timely manner. Cf. Scarborough v. Natsios, 190 F. Supp. 2d 5, 26-27 (D.D.C. 2002) (granting summary judgment because employer "explained why he was denying the request," "invited plaintiff to submit any other appropriate documents that . . . may be helpful," and offered to reconsider request, and Plaintiff did not respond to that letter).

**IV.     Conclusion**

While the Court concludes that the District need not have permitted Plaintiff to work from home, it cannot hold at this stage that all reasonable accommodations were appropriately denied. The Court will, accordingly, grant Defendant's Motion for Summary Judgment in part and deny it in part. A contemporaneous Order to that effect will issue this day.

/s/ *James E. Boasberg*
JAMES E. BOASBERG
United States District Judge

Date: January 23, 2014