UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| SAUNDRA MCNAIR,<br><br>　　　Plaintiff,<br><br>　　　　　v.<br><br>GOVERNMENT OF THE DISTRICT OF COLUMBIA,<br><br>　　　Defendant. | Civil Action No. 12-248 (JEB) |

## MEMORANDUM OPINION

In this day of vanishing trials, when a case finally does go the distance, the jury is supposed to have the last word.  No adherent to this proposition, Plaintiff Saundra McNair, whose suit a jury recently rejected, now asks for another day in court.  In moving for a new trial, she asserts that several errors at the first one deprived her of a just result.  As the verdict was both correct on the merits and not infected by impropriety, the Court will deny the Motion.

**I.　Background**

According to her trial testimony, McNair worked for a number of years at the District of Columbia's Department of Consumer and Regulatory Affairs (DCRA) as a hearing examiner in the rental-housing administration.  In that position, she conducted formal administrative hearings between landlords and tenants.  Suffering from lupus and related complications, she was out of work for considerable time in 2005-07 and alleged that the District violated the Americans with Disabilities Act by failing to provide her reasonable accommodations so that she could return.  Although DCRA at one point proposed McNair's termination, it later reversed that proposal, and she ultimately did return to work in late 2007.

1

The Complaint in this matter initially asserted two counts under the ADA: failure to provide reasonable accommodations and retaliation. The Court dismissed the latter count in response to the District's Motion for Judgment on the Pleadings, but permitted the reasonable-accommodations claim to proceed. See McNair v. District of Columbia (McNair I), 903 F. Supp. 2d 71 (D.D.C. 2012). After discovery, the District moved for summary judgment on the remaining count, which the Court granted in part and denied in part. See McNair v. District of Columbia (McNair II), 11 F. Supp. 3d 10 (D.D.C. 2014). In particular, the Court concluded that the city was not required to permit McNair to work from home because she could not perform the essential functions of her job outside the office. The Court, however, did allow Plaintiff to move forward on the denial of the remaining workplace accommodations she had sought – e.g., a lumbar-support chair and assistance in transporting files.

As the case approached trial, the performance of Plaintiff's original counsel deteriorated markedly. He failed to appear for the pretrial conference, which was the third time he had neglected to appear at a court hearing without any justification or excuse or any prior notice to the Court. See Minute Order of June 5, 2014. The Court ultimately held the pretrial conference on June 10, 2014, and issued an Order setting out certain rulings that would govern the trial, then set for July 8, 2014. See Minute Order of June 10, 2014. Plaintiff's counsel thereafter provided medical evidence of his inability to try the case on his own, and the Court continued the trial numerous times to accommodate him, Plaintiff, and her subsequent counsel, who ultimately entered his appearance on December 18, 2014. See Minute Orders of June 25, 2014; June 26, 2014; June 27, 2014; September 2, 2014; September 16, 2014; October 17, 2014; October 31, 2014; November 12, 2014; January 20, 2015; January 21, 2015; ECF No. 64 (Notice of Appearance).

The Court also spent several hearings with new counsel and the District discussing which documents would be admitted at trial, and it even revisited several of its earlier rulings against Plaintiff, permitting new counsel to make arguments that prior counsel had neglected to present. The Court, over the objections of Defendant, ultimately allowed McNair much greater latitude in her arguments and evidentiary presentation to the jury than it had initially.

Trial commenced on March 16, 2015, and ran through closing arguments on March 18. The jury was asked one liability question on the verdict form – namely, "Has Ms. McNair proved by a preponderance of the evidence that the District of Columbia discriminated against her by refusing to provide her a reasonable accommodation?" ECF No. 86 (Verdict Form). As the ADA requires both employer and employee to engage in a good-faith, interactive process when an accommodation is sought, see McNair II, 11 F. Supp. 2d at 16, the dispute at trial boiled down to whether Plaintiff could prove that the District had not engaged in that interactive process. The evidence adduced focused on the letters exchanged between Plaintiff (and her counsel) and the city about accommodations and her return to work. The jury began its deliberations on March 19 and returned a defense verdict that same day.

Plaintiff now moves for a new trial.

## II.     Legal Standard

Federal Rule of Civil Procedure 59(a)(1)(A) provides that after a jury trial, "[t]he court may, on motion, grant a new trial on all or some of the issues . . . . for any reason for which a new trial has heretofore been granted in an action at law in federal court." Although this articulation may be less helpful than one might desire, courts outside our Circuit have expanded on its meaning. See, e.g., EEOC v. New Breed Logistics, 783 F.3d 1057, 1066 (6th Cir. 2015) ("The language of Rule 59(a) has been interpreted to mean that a new trial is warranted when a

jury has reached a seriously erroneous result as evidenced by . . . the verdict being against the weight of the evidence . . . or the trial being unfair to the moving party in some fashion.") (internal quotation marks and citation omitted); Venson v. Altamirano, 749 F.3d 641, 656 (7th Cir. 2014) ("A new trial is appropriate if the jury's verdict is against the manifest weight of the evidence or if the trial was in some way unfair to the moving party."); Solomon v. School Dist. of Philadelphia, 532 Fed. App'x 154, 157 (3d Cir. 2013) ("A Rule 59(a)(1)(A) motion should be granted only when the great weight of the evidence cuts against the verdict and . . . a miscarriage of justice would result if the verdict were to stand.") (internal quotations marks and citation omitted; ellipsis original).

Such a demanding standard reflects the principle that "Rule 59 is not a vehicle for relitigating old issues, presenting the case under new theories, securing a rehearing on the merits, or otherwise taking a second bite at the apple." Sequa Corp. v. GBJ Corp., 156 F.3d 136, 144 (2d Cir. 1998) (internal quotation marks omitted). "Although parties may certainly request a new trial or amended findings where clear errors or manifest injustice threaten, in the absence of such corruption of the judicial processes, where litigants have once battled for the court's decision, they should neither be required, nor without good reason permitted, to battle for it again." Int'l Ore. & Fertilizer Corp. v. SGS Control Servs., Inc., 38 F.3d 1279, 1287 (2d Cir. 1994) (internal quotation marks and citation omitted).

**III.   Analysis**

In seeking a new trial, McNair sets forth five independent grounds, which the Court addresses separately.

    A.    <u>Exclusion of Exhibit</u>

Her principal basis for relief is the Court's alleged error in excluding from evidence one of her exhibits. A quick setting of the stage: McNair and the District engaged in correspondence and negotiations about accommodations and her return to work from July 2006 through January 2007, when the city proposed her termination. Via counsel, she appealed such proposal through the administrative process. Hearing Examiner John C. Greenhaugh considered this appeal pursuant to the District's Administrative Procedures Act, Comprehensive Merit Personnel Act, and Office of Personal Regulations – but not under the ADA. <u>See</u> Mot., Exh. 3 (Greenhaugh Recommendation) at 1. Greenhaugh concluded that the District had not sufficiently engaged in an interactive process with McNair about her accommodations, and he specifically recommended, *inter alia*, that the city rescind its proposed removal action and recommence negotiations about accommodations. <u>See</u> <u>id.</u> at 8-9. It is this April 2007 Recommendation that McNair wishes admitted.

The Court engaged in lengthy discussions with the parties about exhibits, especially the Greenhaugh Recommendation, and, as noted previously, it even permitted Plaintiff to introduce at trial certain exhibits her prior counsel had omitted from his pretrial statements. After extensive argument, the Court issued its rulings and explanations therefor on the record. A summary of its reasoning follows here.

The Court assumes *arguendo* that the Recommendation is admissible under either FRE 801(d)(2), as an admission of a party opponent, or FRE 803(8), as a public record. It must nonetheless still survive the FRE 403 balancing test, which weighs the probative value of evidence against the danger of "unfair prejudice, confusing the issues, misleading the jury, [etc.] . . . ." This the Recommendation cannot do.

5

The Court continues to believe that the probative value of the Recommendation is substantially outweighed by the likelihood that the jury would be confused or misled by its admission. Introduction of the Recommendation would usurp the jury's factfinding function by providing an independent conclusion as to whether or not the District appropriately engaged in an interactive process regarding Plaintiff's accommodations. This was, in large part, the point of the trial: to determine which party was responsible for the failure of negotiations concerning the terms of McNair's return to work. Admitting the Recommendation would have "confused the jury into thinking that the issue was already decided." Lewis v. City of Chicago Police Dep't, 590 F.3d 427, 442 (7th Cir. 2009). So found the Seventh Circuit in Lewis, which affirmed a district court's exclusion of an EEOC decision and the City of Chicago's internal investigation in a Title VII case. See also Doe v. University of Connecticut, 2013 WL 4504299, at *16 (D. Conn. Aug. 22, 2013) (excluding internal investigative Report under FRE 403); but see Talavera v. Municipality of San Sebastian, 865 F. Supp. 2d 150, 155 (D.P.R. 2011) (admitting internal Report after FRE 403 balancing, but noting that "Report may also be integral to establishing defendants' affirmative defense . . . .").

The jurors' confusion would have been exacerbated because Greenhaugh was not tasked with determining whether the District had violated the ADA; instead, he had to decide, under District personnel statutes and regulations, whether its "proposed notice to remove Ms. McNair from her position . . . for a charge of AWOL can be implemented" and "[w]hether [its] proposed action is appropriate under the circumstances." Recommendation at 2. To the extent he opined on the city's accommodation actions within this framework − entirely separate from the ADA – his conclusions would only have further confounded the jury.

Finally, when considering what prejudice could have befallen McNair from the Court's decision, it is important to bear in mind that the document <u>accepting</u> Greenhaugh's Recommendation <u>was</u> admitted into evidence.  On September 19, 2007, the Acting Director of DCRA wrote a letter to McNair, which explained that Plaintiff's challenge to her proposed removal was referred to "hearing officer John C. Greenhaugh and his recommendation was rendered on April 2, 2007 to rescind the proposed removal." Mot., Exh. 5 (Argo Letter) at 1.  It continued, "I have considered the report and recommendation of the hearing officer and my final decision is to rescind the proposed removal. . . .  You are expected to return to work on Monday, October 1, 2007 . . . .  Based on your previous request, DCRA is willing to make the necessary reasonable accommodation to ensure your smooth transition back to work." <u>Id.</u>  This letter was admitted into evidence as Plaintiff's Exhibit 13, thus permitting her to argue that the District had acted improperly in proposing her termination in January 2007 and that it acknowledged its obligation to continue negotiations on accommodations as late as September 2007.  The prejudice, if any, from excluding the Recommendation was thus minimal.

In maintaining that the Court erred in barring the document, McNair cites a number of cases, none of which offers succor to her cause.  For example, <u>English v. District of Columbia</u>, 651 F.3d 1 (D.C. Cir. 2011), actually undermines her position.  The Court of Appeals there <u>affirmed</u> a district court's exclusion of an internal police-investigation report, similarly finding that potential confusion and prejudice outweighed the exhibit's probative value.  In <u>Henderson v. George Washington University</u>, 449 F.3d 127 (D.C. Cir. 2006), the D.C. Circuit did reverse a trial court's exclusion of a particular report in a medical-malpractice case, but the circumstances there are far removed from those here.  The trial court feared that the admission of a medical report regarding the doctor's work in a different but related case could prejudice the jury into

7

believing he had committed other acts of malpractice. Here, conversely, the Greenhaugh Recommendation ruled, although under a different standard, on a contested issue in this case. Finally, Plaintiff's citations to Hackley v. Roudebush, 520 F.2d 108 (D.C. Cir. 1975), and Townsend v. Mabus, 736 F. Supp. 2d 250 (D.D.C. 2010), are odd, since neither case even involved a jury trial.

Plaintiff's protestations notwithstanding, the Court confirms that the Recommendation should not have been introduced into evidence.

### B. Improper Argument

McNair next asserts that the District made improper arguments in both its opening statement and closing argument. See Mot. at 11-12. The Court is unsure precisely what she is driving at here, in part because Plaintiff neither quotes from the record nor specifies precisely what the District said. It appears that McNair is unhappy with references to her being absent without leave (AWOL), when she believes she was on leave without pay (LWOP). Yet she never objected during the trial to this purported impropriety, and, as the District correctly notes, certain admitted exhibits mentioned her AWOL status. See Opp. at 10. Since the evidence introduced on this point was mixed, it thus presented a question of fact for the jury. Even if the District's attorneys improperly characterized this fact in their arguments to the jury, a position the Court does not acknowledge, such misstatements would not have affected the verdict. This ground for a new trial thus gains no traction.

### C. Judgment as a Matter of Law

Ratcheting up her argument, Plaintiff next contends that the evidence in the case justifies a judgment in her favor principally because "the record is clear that Defendant, by its own adverse action, and notice of Plaintiff's termination[,] cut off the interactive process." Mot. at

8

14. Although she does not expressly cite Fed. R. Civ. P. 50 in such argument, the Court presumes that this is the rule she is invoking. In order to prevail, she must clear a very high bar – namely, she must show that, "after viewing the evidence in the light most favorable to the non-moving party and drawing all reasonable inferences, it is clear that a reasonable jury could only have found for the moving party." Robinson v. WMATA, 774 F.3d 33, 37 (D.C. Cir. 2014) (internal quotation marks and citation omitted).

She is nowhere close to meeting this lofty standard. Plenty of evidence supported the District's position that it engaged in an interactive process with McNair and was willing to accommodate her workplace requests if she would simply return to the office. Had the case been tried to the Court, it would have reached the identical verdict. No judgment as a matter of law is thus warranted.

### D. Juror Strike

In a cursory three-sentence argument in her Motion – which is not even mentioned in her Reply – McNair contends that the Court should have struck a juror (unidentified by number) for cause. See Mot. at 14. She explains that "[d]uring the jury selection and *voir dire,* a member of the jury indicated that he was employed by a company that contracted with Defendant. Hence his livelihood was dependent on that contractual relationship, . . . [thus rendering him biased]." Id.

There are several problems with this argument. First, it is factually inaccurate. No juror explained that she was so employed. One juror, No. 1173, testified that she was employed before retirement in the District's Department of Health as a food inspector and also with solid-waste control. See Tr. of Jury Selection (3/16/15) at 12-14. A second juror, No. 659, said that

9

he currently worked for the District Government as a licensing specialist at the D.C. Lottery. See id. at 19-20.

Second, although these jurors worked for the District currently or in the past, the Court directly asked each if such employment would affect their ability to be fair, and both clearly indicated that it would not. See id. at 14, 20. Indeed, Plaintiff never even moved for the former juror to be excused for cause. He did seek dismissal of the latter, explaining principally that the juror had had professional interactions with Plaintiff's counsel and also noting that the juror had frequent dealings with the DCRA. See id. at 21-22. The Court responded that it and the juror "talked about it . . . in some detail and both . . . his answers and demeanor and forthrightness led me to believe that he could be fair and impartial. So I'll deny that [motion to strike]." Id. at 22. There is no cause to revisit such a determination. See, e.g., United States v. Tibesar, 894 F.2d 317, 319 (8th Cir. 1990) ("A juror employed by the government is not disqualified from a case in which the government is a party simply by reason of his employment. To challenge for cause, a party must show actual partiality growing out of the nature and circumstances of [the] particular case. . . . In the present case, no actual prejudice was shown. We are satisfied that the District Court's refusal to strike, after questioning the juror at voir dire, was not an abuse of discretion.") (internal quotation marks and citations omitted).

Finally, even if the Court should have struck the second juror for cause, Plaintiff had the opportunity to rectify the error by exercising one of her peremptory challenges on this juror, but declined to do so. That, of course, is her tactical choice, but she cannot blame the Court for her own decisions. This is particularly so where she does not assert in her Motion that she was required to expend her peremptory challenges on other jurors who should have been struck for

cause. Absent such a scenario, the Court cannot find any prejudice to Plaintiff in its denial of her motion to strike Juror 659.

    E.   Medical Documentation

Plaintiff's final point is concededly based on a new legal theory. See Mot. at 15. She argues that under the version of the ADA in effect during the events in this case, "there must be a procedure, process, policy, or other format for the collection and maintenance of medical information provided or requested by an employer for an employee seeking a reasonable accommodation." Id. Unfortunately, in this entire section of her brief, she cites neither any case nor any statute or regulation identifying the source of this rule. As a result, the Court has no idea whether this quoted selection from her Motion actually constitutes a true statement of law. Nor would the Court order a new trial based on a theory that was unmentioned at trial or in pretrial proceedings. In any event, the harm McNair contends inured from the jury's not being presented with this theory – *viz.*, that "the jury was left with the belief that Plaintiff was responsible for implementing her own requested reasonable accommodations," id. at 15 – simply does not follow. The Court plainly instructed the jury on the law of reasonable accommodations, see ECF No. 82 (Final Jury Instructions), and Plaintiff takes no issue with such instructions.

**IV.**   **Conclusion**

Plaintiff was entitled to a fair trial on her remaining reasonable-accommodation claim. Because she received one, the Court will issue a contemporaneous Order denying her Motion.

                                  /s/ *James E. Boasberg*
                                  JAMES E. BOASBERG
                                  United States District Judge

Date: August 27, 2015